IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CAREY, | CASE NO. CV F 05-01301 LJO WMW HC |
| Petitioner, | **ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE; DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT; DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |
| vs. | |
| JAMES YATES, | |
| Respondent. | |

On October 14, 2005, Keith Carey ("Petitioner"), a *pro se* California prisoner, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition").[1] On March 29, 2007, James Yates ("Respondent") filed a Motion to Dismiss the first claim in the Petition as unexhausted. On January 11, 2008, the Magistrate Judge recommended that Respondent's Motion to Dismiss be granted and that Petitioner's first claim be dismissed. On February 12, 2008, Petitioner filed objections to the recommendation. On March 6, 2008, the Court adopted the Magistrate Judge's recommendation, dismissed the first claim from the Petition, and granted leave to file an amended petition.

On April 3, 2008, Petitioner filed an First Amended Petition ("FAP"). On September 10, 2008,

---

[1] Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302, the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

1

Respondent filed an Answer to the FAP. Petitioner did not file a Traverse or a request for an extension of time to do so. Thus, this matter is ready for decision.

## PROCEDURAL HISTORY

On October 1, 2002, a Stanislaus County Superior Court jury convicted Petitioner of multiple counts of lewd and lascivious conduct with a child under the age of fourteen (Cal. Penal Code § 288(a)), with an enhancement for "more than one victim" (*id.* § 667.61). (Clerk's Tr. ("CT") 112-17, 168.) On December 17, 2002, the superior court sentenced Petitioner to four concurrent terms of fifteen years to life in state prison. (*Id.* 167-69.)

On December 17, 2002, Petitioner appealed his conviction to the California Court of Appeal. (CT 170.) On March 9, 2004, the court of appeal affirmed Petitioner's conviction in a reasoned opinion. (Lodged Doc. ("LD") 1.) On April 9, 2004, Petitioner filed a petition for review in the California Supreme Court, which summarily denied the petition on May 12, 2004. (LD 3-4.)

On August 2, 2004, Petitioner filed a habeas petition in the Stanislaus County Superior Court, which denied the petition in a reasoned opinion on August 16, 2004. (LD 7-8.) On September 10, 2004, Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied the petition on September 17, 2004. (LD 9-10.) On October 22, 2004, Petitioner filed a habeas petition in the California Supreme Court, which summarily denied the petition on August 31, 2005. (LD 5-6.)

## FACTUAL BACKGROUND[2]

In October of 2001, a counselor at the victim's school in Modesto received information that the victim, H., had been molested. The counselor spoke with H.'s friend and then called the police. H. also reported to her father that she had been molested.
H. testified that she was molested by her friend K.'s stepfather.[3] She stated in September of 2001 she had spent the night at K.'s house and [Petitioner] had tickled her, pinched her, touched her breasts and commented on their size. She stated [Petitioner] chased them around and tried to put his hands down her and K.'s pants, but that her pants were too tight. [Petitioner] did touch H.'s vagina under her clothing at some point during the night. H. further stated that [Petitioner] tried to place his penis in her mouth, it went in part way, and that her friend K. was in the room when this happened. [Petitioner] let her go but ejaculated onto her shirt. Later that same night, [Petitioner] forced H. and K. to rub his penis.

---

[2] The Court adopts the factual background from the March 9, 2004, California Court of Appeal opinion on direct review as a fair and accurate summary of the evidence presented at trial. *See* 28 U.S.C. § 2254(e)(1).

[3] [California Court of Appeal footnote 2:] There was some discrepancy in the record whether [Petitioner] was K.'s stepfather or the mother's live-in boyfriend; K.'s mother testified she was not married to [Petitioner].

>A week later, H. again spent the night at K.'s house. While the girls were sleeping [Petitioner] tried to get on top of her. She ran into the kitchen and [Petitioner] followed her. He touched her breasts, attempted to remove her panties, and put his finger inside her vagina so that it hurt.
>H. subsequently told some friends about what happened, then told her father. She underwent a medical exam after reporting the molestation.
>At trial, K. testified that [Petitioner] had never touched K. or H. inappropriately. She said she lied to police officers earlier about the molestations because she wanted H. to be her friend.
>When [Petitioner] was interviewed by police, he admitted he grabbed the girls and chased them around the house, and that he "sometimes wakes the girls up by getting on the bed and messing with them."
>Dr. Robert Altman testified that he conducted a visual vaginal exam of H. and found no evidence of trauma to her vaginal area. He said that could be consistent with her claim of digital penetration.

(LD 1 at 2-3.)

## PETITIONER'S CLAIMS

1. The prosecutor delayed discovery of an exculpatory medical examination of the victim, which denied Petitioner due process of law (FAP 4);[4]

2. The prosecutor committed misconduct by commenting to the jury on Petitioner's failure to testify and explain prior statements made to the police (*id.*); and

3. Ineffective assistance of trial counsel for failing to investigate and discover evidence of the victim's history of filing false police reports (*id.* 5).

## STANDARD OF REVIEW

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its provisions. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

>(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[4] For ease of reference, the Court utilizes the CM/ECF pagination for Petitioner's FAP.

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000) (as amended). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 654 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 24-25, 27. An "unreasonable application" is different from an "erroneous" or "incorrect" one.

4

*Williams*, 529 U.S. at 409-10; *see also Woodford*, 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 686 (2002).

A state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## DISCUSSION

### Claim One

In his first claim, Petitioner contends that the prosecutor delayed producing the victim's medical examination to the defense in violation of his due process rights. (FAP 4.) Because the California Supreme Court summarily denied this claim on direct review, the Court must "look through" to the last reasoned decision, that of the California Court of Appeal on direct review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). In rejecting Petitioner's claim, the court of appeal stated:

> [Petitioner]'s first claim of error is that he was prejudiced by the delayed discovery that the victim had undergone a medical exam. Specifically, he claims the "[l]ate disclosure of this medical examination during the trial prevented proper preparation by the defense." We disagree.
>
> First, we note that the record does not support any conclusion that the medical evidence was purposefully withheld or even that it was necessarily required to be disclosed under the discovery statute. The prosecutor is required to disclose "exculpatory evidence" or any medical reports, exams, etc. that she "intends to offer in evidence at the trial." (§ 1054.1, subds.(e), (f).)[5] Clearly, the prosecutor here had no intention to offer this evidence at trial; she did not even know of its existence until the victim testified. The prosecution apparently became aware of the medical report at the same time defense counsel did: during cross-examination, the victim stated that after she talked to the police she had a medical exam. While the victim testified that "the police" did a medical exam, further investigation revealed the police did not order a medical exam because the victim had previously been molested. Instead, the victim's father had the medical exam done.
>
> In any event, presuming the evidence was, alternatively, exculpatory and thus required to be disclosed, then the prosecution was required under section 1054.7 to disclose the medical report "immediately" upon its discovery, which she did. (§§ 1054.1, subd. (e); 1054.7.) The prosecution retrieved and turned over the medical report the next day and defense counsel subpoenaed and presented the reporting doctor as a witness. The

---

[5] [California Court of Appeal footnote 3:] Section 1054.1, subdivisions (e) and (f), provide, in relevant part: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] ... [¶] (e) Any exculpatory evidence. (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

record reveals absolutely no support for [Petitioner]'s implication that the prosecutor purposefully avoided finding out about the medical exam in order to "feign ignorance about the subject," and the trial court made no such finding.

Further, even if the prosecution had failed to comply with the discovery requirements set forth in section 1054.1, [Petitioner] points to no error by the trial court for us to reverse. He claims generally that he was "denied due process," but neither below nor on appeal does [Petitioner] demonstrate any willful conduct, significant prejudice, or the insufficiency of the trial court's actions. The trial court did not find that the prosecutor had intentionally withheld discovery, and nothing in the record indicates that the prosecutor's conduct was a deliberate effort to gain a tactical advantage at trial. "[T]he normal remedy for noncompliance with a discovery order is not suppression of evidence, but a continuance." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1131.) "It is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm." (*People v. Pinholster* (1992) 1 Cal.4th 865, 941.) There is no evidence that the alleged delay in discovery was prejudicial or that the court's "remedy," to the extent [Petitioner] was entitled to a remedy, was insufficient to cure any prejudice. Here, defense counsel received the report, subpoenaed the doctor and called him to testify. As the Supreme Court has observed, "As a matter of due process there was no suppression of material evidence favorable to the accused, and any failure to timely disclose the witness was harmless and did not undermine the reliability of the proceedings. [Citation.]" (*Ibid.*) Moreover, in this case counsel did not request a continuance and, as stated above, the court ultimately gave him the opportunity to call and examine the reporting doctor during trial. With respect to the appropriate remedy for the delayed discovery, the trial court noted, "[Defense counsel] hasn't asked me to do anything. I don't know why we are discussing it further."

Moreover, even if counsel *had* requested and received a continuance to, as he puts it, "evaluate the evidence and obtain independent expert review of it," we fail to see how this would have improved his case. A delay in the disclosure of exculpatory evidence merits reversal on appeal only where the delay itself prejudices the defense at trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 951; *People v. Garcia* (2000) 84 Cal.App.4th 316, 330-331.) As a general rule, where disclosure occurs in time for the defense to investigate the basis for the witness' testimony and to confront and cross-examine the witness, there is no prejudice and thus no *Brady* on violation. (*Ibid.*) "It is the defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance would not have cured the harm." (*People v. Pinholster*, *supra*, 1 Cal.4th at p. 941.) To prevail, [Petitioner] must show there is a reasonable probability that the result of the trial would have been different had he been aware of the evidence before trial or offered a continuance. (*Brady v. Maryland* (1963) 373 U.S. 83.)

No prejudice occurred here. As it was, the doctor, called by [Petitioner], testified that he "didn't find anything in the exam to either refute or support" the victim's testimony, that the hymen "looked completely normal" and that he observed no "trauma" or evidence of the injury that the victim was alleging. The doctor also testified that "depending on the severity of the tear, the trauma that happened," he would expect to visualize some sort of tear in the hymen. We fail to see what testimony defense counsel could have presented through an additional expert that would have been better than what he got out of the reporting doctor. He maintains he could have employed his own expert to "*further* explain the low probability of absolutely no trauma indications" given the victim's testimony, but even his argument on appeal reflects that such testimony would have been largely redundant. (Italics added.) Accordingly, even assuming there was some error in not continuing the trial or taking some other remedy unspecified by [Petitioner], he has not shown prejudice. (*People v. Pinholster*, *supra*, 1 Cal.4th at p. 941.)

(LD 1 at 3-6.)

6

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Moreover, the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (*quoting Kyles v. Whitley*, 514 U.S. 419, 438 (1995)). "In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Id.* at 281 (*quoting Kyles*, 514 U.S. at 437).

There are three essential components to a *Brady* claim: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching," (2) the "evidence must have been suppressed by the State," and (3) "prejudice must have ensued." *Strickler*, 527 U.S. at 281-82. "[T]he terms 'suppression,' 'withholding,' and 'failure to disclose' have the same meaning for *Brady* purposes." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).

To determine whether prejudice exists, a court must look to the materiality of the suppressed evidence. *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006); *see Jackson v. Brown*, 513 F.3d 1057, 1070-71 (9th Cir. 2008). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Reasonable probability" may be found even where the remaining evidence would have been sufficient to convict the defendant. *Strickler*, 527 U.S. at 290. Moreover, "reasonable probability" can be found without finding that the outcome would more likely than not have been different. *Kyles*, 514 U.S. at 434. Instead, "[a] 'reasonable probability' of a different result [exists] when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (*quoting Bagley*, 473 U.S. at 678). Courts must examine the withheld evidence individually and cumulatively. *See id.* at 436-37 & n.10.

Turning to the *Brady* factors, the victim's medical examination is arguably favorable to Petitioner because it showed no medical evidence of sexual abuse to the victim. (1 Rep.'s Tr. ("RT") 160-61, 250-51); *see Strickler*, 527 U.S. at 281-82. However, Petitioner has failed to show that the prosecution suppressed, withheld, or failed to disclose the medical examination to the defense, or that Petitioner

1 | suffered prejudice.  *See Benn*, 283 F.3d at 1053; *see also Kyles*, 514 U.S. at 434.

2 | As the court of appeal ably stated, the record does not support any conclusion that the medical examination was purposely withheld or that the prosecution failed to disclose the victim's medical examination upon its discovery.  The record shows that the prosecutor did not know of the victim's medical examination until the victim testified thereto in the defense's cross-examination.  (1 RT 89, 118-19.)  While the victim testified that "the police" had her undergo a medical exam, further investigation revealed the police did not order a medical exam because the victim had been molested previously.  (*See id.* 89, 118-19, 161.)  Instead, the victim's father had the victim undergo the medical exam.  (*Id.* 161.)  In addition, Dr. Robert Altman, the doctor that conducted the medical examination, testified that the police did not contact him with regard to obtaining a medical examination.  (2 RT 366, 374.)  After the victim's testimony stating she had a medical examination, the prosecution retrieved and turned over the medical report to defense counsel the next day, and defense counsel subpoenaed and presented the reporting doctor as a witness.  (1 RT 160-61, 251; 2 RT 353.)

Furthermore, the court of appeal correctly concluded that no prejudice resulted by the delayed receipt of the medical examination.  *Kyles*, 514 U.S. at 434.  After receiving the medical report, defense counsel located and called Dr. Altman to the stand.  (1 RT 160-61, 251; 2 RT 353.)  Dr. Altman testified that he did not find any evidence of trauma, bruising, or prior penetration of the vaginal area, and that the victim's hymen looked normal.  (2 RT 359, 364, 368-69.)  Dr. Altman also testified that he did not find anything in the examination to either refute or support the history the victim described to him.  (*Id.* 377.)  Dr. Altman's testimony established there were no physical injuries showing that the victim suffered sexual abuse.  Moreover, during closing argument, defense counsel argued that Dr. Altman testified there was no evidence of trauma, bruising, or prior penetration.  (*Id.* 431.)

Accordingly, the Court finds that the California courts' rejection of Petitioner's *Brady* claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this claim.

### **Claim Two**

In his second claim, Petitioner asserts that the prosecutor improperly commented to the jury on Petitioner's failure to testify and explain statements made to police that "he messed around with the

victims." (FAP 4.)[6] Because the California Supreme Court summarily denied this claim on direct review, the Court must "look through" to the last reasoned decision, that of the California Court of Appeal on direct review. *See Ylst*, 501 U.S. at 803-05. In rejecting Petitioner's claim, the court of appeal stated:

> [Petitioner] next contends the prosecutor improperly and prejudicially commented on his failure to testify. In closing argument, the prosecutor stated,
>
>> "We heard the defendant's statements to Officer Parsons, how he admitted some things. He admitted to getting on to the girls' bed and messing around with them. Ever explain that?
>> "Well, I submit to you, ladies and gentlemen, that there was some truth in his statement. Though he denied some sexual acts, he was trying to tell the truth to Officer Parsons. Because he did admit to some, some acts with the girls. And he's admitted to [K.'s mother] what he did."
>
> [Petitioner] argues that these statements constituted an improper comment on his failure to testify. Respondent counters that [Petitioner] has waived any such argument and, in any event, that the comment was merely directed generally at the defense's failure to provide any explanation about what [Petitioner]'s admission that he "messed around" with the girls meant. Finally, respondent maintains even if there was some error, it was harmless.
> We agree with respondent in all respects. First, the failure to object to the alleged improper statements at the time of trial waives the issue for appeal. (See *People v. Hughes* (2002) 27 Cal.4th 287, 332 [by failing to object to prosecutor's allegedly improper comments during closing argument, defendant waived claim of *Griffin* error].) In any event, and to resolve [Petitioner]'s corresponding claim of ineffective assistance of counsel, we agree that the statement was both unobjectionable and (for that reason and others) without any prejudice to [Petitioner].
> It is improper for a prosecutor to comment on a defendant's failure to testify. (*People v. Vargas* (1973) 9 Cal.3d 470, 475, citing *Griffin*, *supra*, 380 U.S. 609.) However, "the rule prohibiting comment on defendant's failure to testify 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.' [Citation.]" (*People v. Morris* (1988) 46 Cal.3d 1, 35, disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-545, fns. 5-6; see also, *People v. Vargas, supra,* 9 Cal.3d at p. 475; *People v. Wash* (1993) 6 Cal.4th 215, 263.)
> The prosecutor's argument in this case was proper. She did not comment on [Petitioner]'s failure to testify or deny guilt. The prosecutor merely challenged the defense's failure to explain the statement [Petitioner] had made to police about "messing around" with the girls. [Petitioner] in reply argues his testimony was the only possible evidence regarding an explanation of what "messing around" with the girls meant and thus the prosecutor's remarks indirectly commented on his failure to testify. We disagree. The prosecutor specifically referred to [Petitioner]'s girlfriend as knowing about "what

---

[6] Respondent argues that Petitioner's prosecutorial misconduct claim is procedurally defaulted. (Answer 9-10.) When the claims raised in a habeas petition are easier to resolve on the merits, the interests of judicial economy counsel against deciding the more complex or uncertain procedural default issues. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (*citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982). Because such a situation exists here, the Court will address Petitioner's prosecutorial misconduct claim on the merits.

he did," and argued that the girlfriend's testimony – rather than explaining his prior admission – simply reflected her desire to believe [Petitioner] did nothing wrong and make sure her family was supported. Moreover, the defense argued that the victim was lying and was "just the kind of girl that would come up with some sort of a thing like this." However, the defense did nothing to counter [Petitioner]'s own admissions of "messing around" until counsel responded in his argument that such a statement indicates innocence. At the time the prosecutor claimed there had been no explanation, however, she was entitled to comment on the defense's failure to elicit satisfactory testimony from the witnesses (i.e., K. and K.'s mother) about what kind of innocent "messing around" [Petitioner] engaged in.

In any event, even if the statements could be interpreted so as to constitute *Griffin* error, it is not reversible. *Griffin* error does not require reversal if it was harmless beyond a reasonable doubt. (*People v. Hardy* (1992) 2 Cal.4th 86, 154.) An error is harmless under that standard where the error was "'... unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" (*People v. Flood* (1998) 18 Cal.4th 470, 494.) "This determination 'must be based on our own reading of the record and on what seems to us to have been the probable impact of the ... [errors] on the minds of an average jury.' [Citation.]" (*People v. Vargas, supra,* 9 Cal.3d 470, 478.) The California Supreme Court has repeatedly stated that "'indirect, brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn there from, are uniformly held to constitute harmless error. [Citations.]' [Citation.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340, quoting *People v. Hovey* (1988) 44 Cal.3d 543, 572.) To the extent the prosecution's statement in this case could be interpreted as a reference to the fact defendant did not testify, the reference was both indirect and brief. Here, the prosecutor made no explicit reference to defendant's or another witness's willingness or unwillingness to testify. The likelihood the jury was swayed by the isolated remark to convict defendant where it would not otherwise have done so was negligible. Further, the trial court gave CALJIC Nos. 2.60 and 2.61, instructing the jury not to discuss or draw any inference from a defendant's failure to testify and reiterating the prosecution's burden of proof. Numerous decisions cite instructions as factors negating *Griffin* error. (See, e.g., *People v. Vargas, supra,* 9 Cal.3d 470, 478 [*Griffin* error harmless beyond a reasonable doubt where court admonished jury and gave CALJIC No. 2.60]; *People v. Miller* (1996) 46 Cal.App.4th 412, 430, disapproved on another point in *People v. Cortez* (1998) 18 Cal.4th 1223, 1239-1240.)

Finally, unlike [Petitioner], we do not view the case as sufficiently close that the prosecutor's remark conceivably could have made a difference in the outcome. While the victim's testimony may not have been perfect, it was consistent in material respects and clearly sufficient. Further, [Petitioner]'s counsel pointed out to the jury that the case rested "solely on [the victim's] testimony" and provided an explanation, during closing argument, for the "messing around" comment by stating that [Petitioner] only would have said that if the "messing around" truly were innocent in nature. Given the state of the evidence and subsequent argument made by counsel, we conclude [Petitioner] could not have been prejudiced by the remark even if it did constitute *Griffin* error. (*People v. Hardy, supra,* 2 Cal.4th at p 154.)

(LD 1 at 6-9.)

The Due Process Clause prohibits a prosecutor from commenting on a defendant's decision not to testify. *Hovey*, 458 F.3d at 912 (*citing Griffin v. California*, 380 U.S. 609, 615 (1965)). "While a direct comment about the defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only 'if it is manifestly intended to call attention to the defendant's failure to

testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" *Id.* (*quoting Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987)). If a prosecutor commits *Griffin* error, "[r]eversal is warranted only 'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal.'" *Id.* (*quoting Lincoln*, 807 F.2d at 809). "Conversely, courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions." *Lincoln*, 807 F.2d at 809.

Here, as stated by the court of appeal, the prosecutor did not comment, directly or indirectly, on Petitioner's failure to testify or deny guilt, but merely challenged the defense's failure to explain the statement Petitioner made to police about "messing around" with the victim and her friend. (*See* 2 RT 415-16.) In addition, preceding the prosecutor's comment about Petitioner's statement to police, the prosecutor summarized the evidence in the case, including the credibility of the victim's friend and mother. (*See id.* 413-15.) The comment regarding Petitioner's statement to police was merely a continuation of the prosecutor's summary of the evidence against Petitioner. It was not until defense counsel's closing argument that defense counsel addressed Petitioner's statement of "messing around" as something an innocent person would not admit to the police. (*See id.* 431.)

Even if the prosecutor's statement constitutes *Griffin* error, it was harmless. The prosecutor's statement was not extensive but brief, indirect, and isolated. (*See* 2 RT 415-16); *Hovey*, 458 F.3d at 912. In addition, there was not "an inference of guilt from silence . . . stressed to the jury as a basis for the conviction," because, as stated, the prosecutor was summarizing the facts against Petitioner, which included damaging statements to police and to the victim's mother. (2 RT 415-16.) Any inference of guilt from silence was negated by the trial court's instructions to the jury (1) not to discuss or draw any inferences from Petitioner's failure to testify (CT 86-87), (2) reiterating the prosecution's burden of proof (*id.* 79), and (3) that statements made by the attorneys during trial are not evidence (*id.* 69-70). *See Lincoln*, 807 F.2d at 809. A jury is presumed to have followed the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Finally, there was extensive evidence of Petitioner's guilt, including the victim's testimony, her friend's testimony corroborating the victim's testimony (*see* 1 RT

135-40), and Petitioner's damaging statements to police.

Accordingly, and for the foregoing reasons, the Court finds that the California courts' rejection of Petitioner's *Griffin* claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### Claim Three

In his third and final claim, Petitioner contends that his trial counsel was ineffective for failing to investigate and discover evidence of the victim's history of filing allegedly false police reports relating to sexual abuse. (FAP 5, 13-16.) Petitioner did not raise this claim on direct review, but did raise it in habeas petitions before the Stanislaus County Superior Court, California Court of Appeal, and California Supreme Court. (*See* LD 5, 7, 9.) Because the California Supreme Court summarily denied this claim on habeas review, the Court must "look through" to the last reasoned decision, that of the Stanislaus County Superior Court on habeas review. *See Ylst*, 501 U.S. at 803-05. In rejecting Petitioner's claim, the superior court stated:

> [Petitioner] contends his trial counsel was ineffective for failing to seek a motion under Evidence Code Section 782. It appears that [Petitioner] thinks he would have discovered admissible evidence that would have persuaded the jury that he wasn't guilty.
> The victims [sic] <u>prior</u> sexual abuse allegations wouldn't be allowed under Section 352 of the Evidence Code. Whether true or false the "mirrored allegations" would require a mini trial that [would] cause undue consumption of time.

(LD 8.)

For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them. *Id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally

competent assistance will the petitioner prove deficient performance. *Id.* at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment. *Id.* at 691; *Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir. 1998). A petitioner must show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694. Thus, the petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

To supply context to Petitioner's claim, a summary of the relevant facts will follow. At trial outside the presence of the jury, the prosecutor informed the court that she did not receive a motion under California Evidence Code section 782 inquiring into any past sexual conduct by the victim. (1 RT 5.)[7] The prosecutor stated that another individual previously molested the victim and that this particular individual was convicted of the offense. (*Id.*) The prosecutor requested that there be no mention of any past sexual conduct by the victim because it was not relevant and would be time

---

[7] At the time of trial, California Evidence Code section 782 read, in relevant part:
(a) In any prosecution under Section . . . 288 . . . of the Penal Code, . . . if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness . . . the following procedure shall be followed:
(1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness.
(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.
(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.
(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.
(b) As used in this section, "complaining witness" means the alleged victim of the crime charged, the prosecution of which is subject to this section.
Cal. Evid. Code § 782 (1996).

consuming. (*Id.* 5-7.)

Defense counsel responded that he did not receive any police reports about the prior molestation incident that occurred in Sonoma County. (1 RT 5.) Defense counsel indicated the issue of prior molestation could arise to rebut any child abuse accommodation syndrome evidence. (*Id.* 6.) Defense counsel stated that he did not think the evidence was admissible because he did not have a legitimate theory that would permit the evidence and the incident was remote in time. (*Id.*) The trial court ultimately did not rule on the prosecutor's request that there be no mention of the victim's past sexual conduct. (*Id.* 5-10.)

On defense counsel's cross-examination of Vanessa, a girl that attended school with the victim, Vanessa testified:

> [Defense counsel]. Had you ever heard [the victim] tell stories about molests or jokes about molests before?
> [Vanessa]. Stories, but never jokes.
> Q. Okay. About how often would she tell these stories?
> A. I only remember hearing about them like once or maybe twice.
> Q. Okay. Did she always get a lot of attention when she told these stories?
> A. From me or from --
> Q. From the people that she was telling them to?
> A. They felt really bad for her.
> Q. Okay. During the time that she was talking about this did she ever say anything about being raped?
> A. I think Ian brought it up, but then she was like, no, it was molest. So --

(1 RT 110-11.)

After Vanessa's testimony, the prosecutor expressed concern about defense counsel's questioning relating to the prior molestation. (*Id.* 111.) The prosecutor argued the jury could draw the inference that the victim "told a story" about being molested previously, and that people "felt bad" for her. (*Id.*) The prosecutor again stated the prior incident was irrelevant, and that the man that previously molested the victim either pled guilty or was convicted by a jury. (*Id.* 111-12.) The prosecutor stated the only cure was to admit evidence that the victim was molested previously and that the molester was convicted, so the jury would not be left with the impression that the victim told untrue stories about being molested. (*Id.* 112-15.)

The trial court ultimately excluded evidence of the Sonoma County molestation incident because its admission would require an "undue consumption of time" and create a substantial danger of misleading and confusing the issues for the jury. (1 RT 116.) The prosecutor then requested that the

court instruct the jury about Vanessa's testimony elicited by defense counsel. (*Id.* 116-17.) The court stated that it was not clear what Vanessa was referencing during her testimony and decided to allow further questioning. (*Id.* 117-18.) Subsequently, however, the prosecutor decided not to pursue her request to have Vanessa questioned, but requested defense counsel be sanctioned for questioning about the victim's past molestations. (*Id.* 178-80.) The court denied the request for sanctions. (*Id.* 180.)

Petitioner fails to show what information about the victim's prior molestation incident his counsel failed to obtain, and fails to show that it would have produced a different result at trial. It is not clear whether defense counsel attempted to obtain any further information about the prior incident than what he learned at trial. Even if defense counsel failed to investigate further, he was reasonable in not doing so because the previous molestation incident resulted in a conviction, either by plea or jury verdict. Thus, the prior molestation was irrelevant to show the victim made prior false allegations of sex crimes. Because the prior incident lacked probative value, the trial judge appropriately found the evidence was not admissible because its admission would require an undue consumption of time and create a substantial danger of misleading and confusing the issues for the jury. *See Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (stating trial judges may exclude evidence if its probative value is outweighed by factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury). Petitioner has not presented any evidence that the victim has a history of reporting false sex crimes and has not identified any evidence that would have changed the outcome of the trial.

Based on the foregoing, Petitioner has failed to show counsel's performance was deficient. *Strickland*, 466 U.S. at 687-88. Moreover, even if counsel's performance was deficient, Petitioner has failed to show the result of the trial would have been any different. *Id.*

Accordingly, the Court finds that the California courts' rejection of Petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Certificate of Appealability

Under the AEDPA, an applicant seeking to appeal a district court's dismissal of a habeas petition under 28 U.S.C. § 2254 must first obtain a certificate of appealability ("COA") from a district judge or

circuit judge. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A judge should either grant the COA or state reasons why it should not issue. Fed. R. App. P. 22(b)(1). A COA request should be decided by a district court in the first instance. *Id.*; *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

The applicant for a COA must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *United States v. Christakis*, 238 F.3d 1164, 1168 n.4 (9th Cir. 2001). A "substantial showing" is defined as a demonstration (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues differently; or (3) that issues are adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see Slack*, 529 U.S. at 483-84 (stating that except for substituting the word "constitutional" for the word "federal," § 2253 codified the pre-AEDPA standard announced in *Barefoot v. Estelle*). When, as present here, a district court has rejected constitutional claims on their merits, the COA standard is straightforward. "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

This Court has reviewed the record of this case and finds that reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. On the merits of this case, reasonable jurists would not debate the constitutionality of Petitioner's conviction and sentence. Accordingly, the Court declines the issuance of a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court DENIES the First Amended Petition for Writ of Habeas Corpus with prejudice and DECLINES the issuance of a certificate of appealability. The Clerk of Court is ORDERED to enter Judgment for Respondent and to close Case No. CV F 05-01301 LJO

IT IS SO ORDERED.

**Dated:   December 22, 2008**             /s/ Lawrence J. O'Neill
                                                                UNITED STATES DISTRICT JUDGE